DAVID M. TROJANOWSKI, WSBA #56258
Z LAW, LLC
2345 YORK ROAD, SUITE B-13
TIMONIUM, MD 21093
(443)213-1977
DMT@ZLAWMARYLAND.COM

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON ROBERTS, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VISTAPRINT NETHERLANDS B.V. and CIMPRESS USA INCORPORATED,<br><br>Defendants. | CASE NO. 2:25-cv-00496-SAB<br><br>FIRST AMENDED CLASS ACTION COMPLAINT (RCW 19.190, 19.86) AND REQUEST FOR JURY TRIAL |

## I. NATURE OF THE ACTION

1. This is a class action brought by Named Plaintiff Jason Roberts (“Roberts” or “Named Plaintiff”) against Defendants VistaPrint Netherlands B.V.

and Cimpress USA Incorporated (collectively "VistaPrint" or "Defendants") for false and misleading email marketing.

2. Defendants send two types of emails to Washington consumers which contain false or misleading information in the subject lines.

3. First, Defendants send emails with subject lines that falsely represent unqualified discounts on purchases without disclosing material exclusions ("Percentage Discount Emails"). The subject lines of the Percentage Discount Emails imply a straightforward percentage discount on the recipient's entire purchase (such as "29% off your entire order" or "20% off your entire cart" or "30% off your whole cart"), without limitations or exclusions, enticing consumers to open the email in anticipation of a broad bargain. Upon opening the email, however, the body reveals that there are significant exclusions that do not qualify for the percentage discount.

4. The Percentage Discount Emails contain subject lines that are false or misleading because they omit material exclusions, leading reasonable consumers to believe that they will receive the promised percentage discount on their entire purchase. These omissions are material as they mislead reasonable consumers about the discount's scope, inducing interest in purchases that may not qualify and affect purchasing decisions.

5. Under FTC Guides Against Deceptive Pricing at 16 C.F.R. § 233.1, bargain advertising like percentage-off offers must be genuine and not deceptive; reductions should be from a regular price without undisclosed limitations that undermine the claimed savings.

6. Defendants' Percentage Discount Emails that contain subject lines with unqualified percentage discounts off the purchase are misleading as the exclusions contained in the fine print within the body of the email substantially restrict the offer's applicability, failing to disclose terms "at the outset" in a manner that avoids misunderstanding. Defendants knowingly omit these exclusions in Percentage Discount Emails subject lines to drive email opens and engagement, as evidenced by their consistent use of fine-print disclaimers in promotional emails.

7. Second, Defendants send emails that misstate the duration of given promotions, in an apparent effort to drive sales by creating a false sense of urgency ("Limited Sale Emails"). These misstatements are material because they mislead reasonable consumers about sale durations, inducing urgency that affects purchasing decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

8. The subject lines of the Limited Sales Emails falsely claim that a certain sale or discount is limited to a specific time, such as "two days only" or "one more day" or "ends soon" or "ends tonight" or "final hours," when, in reality, the

offer lasts longer than advertised or the item has already been on sale for longer than advertised.

9. Defendants also use its preconceived "sale extensions" as an excuse to send consumers additional emails purporting to notify them that a sale is ending or that a sale has been extended. This practice causes consumers' inboxes to become inflated with spam.

10. Defendants' practice of sending Percentage Discount Emails and Limited Sale Emails that contain false and misleading information in the subject line violates the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and the Washington Consumer Protection Act, RCW 19.86.

11. By sending Percentage Discount Emails and Limited Sale Emails with false and misleading information to Named Plaintiff and the Class (defined below), Defendants clog email inboxes with false information and violate Named Plaintiff and Class members' rights to be free from deceptive commercial emails.

12. Named Plaintiff brings this action as a class action on behalf of persons residing in Washington who also received Defendants' false and misleading emails. Named Plaintiff's requested relief includes an injunction to end these practices, an award to Named Plaintiff and Class members of statutory damages under RCW 19.190.040 (1) and treble damages under RCW 19.86.090 for each illegal email sent, and an award of attorneys' fees and costs.

## II. PARTIES

13. Named Plaintiff Roberts is a citizen of Washington, residing in Spokane County, Washington.

14. Named Plaintiff Roberts signed up on Defendants' online marketplace to receive commercial electronic mail and has received commercial electronic mail from Defendants.

15. Named Plaintiff Roberts has created accounts on Defendants' online marketplace using his email addresses, billing address, and shipping address in Washington.

16. Named Plaintiff Roberts has placed orders on Defendants' online marketplace using his accounts linked to his email addresses that were ship to him in Washington.

17. Named Plaintiff Roberts has clicked on images contained in commercial electronic mail from Defendants that directed his to the online marketplace.

18. Named Plaintiff Roberts received the commercial electronic mail alleged herein from Defendants while in the state of Washington.

19. Defendant VistaPrint Netherlands B.V. is a corporation formed under the laws of The Netherlands. Defendant currently is, and at all relevant times in the past has, engaged in substantial business activities in Washington.

20. Defendant Cimpress USA Incorporated is a corporation formed under the laws of Delaware. Defendant currently is, and at all relevant times in the past has, engaged in substantial business activities in Washington.

21. Defendants own and operate a large online marketplace where consumers are invited to shop for goods sold by Defendants and input data directly.

22. Defendants' online marketplace is located on the internet at www.vistaprint.com.

23. Defendants have data both from purchases and otherwise collected directly from consumers, computer programs, and third-party sources to identify the location of its email recipients. www.vistaprint.com/vista-privacy-and-cookie-notice (last visited February 24, 2026).

24. Defendants receive information inputted into its online marketplace by its customers including but not limited to first name, last name, gender, email address, password, billing address, shipping address, and telephone number and stores this information as part of a customer's profile. *Id.*

25. Defendants also receive and store purchase and transaction histories including the billing and shipping address for the transaction and connect this information with the customer's profile. *Id.*

26. Defendants automatically collect a customer's IP address, location information including "state and/or city", and online identifiers such as cookie data

or data collected with similar technologies anytime a customer uses the online marketplace or clicks on a link in a commercial electronic mail. *Id.*

27. Defendants use web beacons (also known as tracking pixels or tracking tags) amongst other tools that allow Defendants to learn whether an email was opened, how much of the email was viewed, for how long the email was viewed, what type of device the email was viewed on, whether any links in the email were clicked, the recipient's IP address, and the recipient's location. *Id.*

28. Defendants collect both location and geo-location data from consumers when they subscribe to receive commercial electronic mail on Defendants' online marketplace using the same tools. *Id.*

29. Defendants use tracking tools to identify the IP Address and location of a consumer that clicks through a commercial electronic mail. *Id.*

30. Defendants also "collect personal information (e.g. name, email, address, phone) from lead enhancement companies to help us improve our service offering[.]" *Id.*

31. Defendants regularly send the commercial electronic mail at issue in this Complaint to Named Plaintiff and Class members throughout Washington.

32. Named Plaintiff and Class members regularly receive commercial electronic mail from Defendants throughout Washington.

## III. JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail Act claims).

34. This Court has personal jurisdiction over Defendants under RCW 4.28.185. This Court may exercise personal jurisdiction over the out-of-state Defendants because the claims alleged in this civil action arose from, without limitation, Defendants' purposeful transmission of electronic mail messages to consumers within the State of Washington. In addition, Defendants intended, knew, or is chargeable with the knowledge that its out-of-state actions would have a consequence within Washington.

35. This Court also has personal jurisdiction over Defendants under RCW 19.86.160. For example, and without limitation, Defendants engaged and is continuing to engage in conduct in violation of RCW 19.86 which has had and continues to have an impact in Washington which said chapter reprehends.

36. Venue is proper in Spokane County Superior Court because Defendants have its residence in Spokane County. RCW 4.12.025. Currently and at all relevant times, Defendants have transacted business in Spokane County,

including without limitation by sending the marketing emails alleged herein to residents of Spokane County, and maintaining stores for the transaction of business within Spokane County.

## IV. FACTUAL ALLEGATIONS

### A. The CEMA prohibits initiating or conspiring to initiate the transmission of commercial emails that contain any false or misleading information in the subject lines.

37. Washington's Commercial Electronic Mail Act ("CEMA") regulates deceptive email marketing.

38. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019).

39. The Washington Supreme Court recently confirmed this understanding, holding that RCW 19.190.020(1)(b) "prohibits the use of any false or misleading information in the subject line of a commercial e-mail." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 583 (2025).

40. An injury occurs anytime a commercial email is transmitted that contains false or misleading information in the subject line. *Id*. at 1011. In *Brown*, the Washington Supreme Court reaffirmed that "the injury is receiving the e-mail

that violates CEMA," and that a plaintiff need not show actual damages to recover statutory penalties. *Brown*, 4 Wn.3d at 585.

41. Under CEMA, it is irrelevant whether misleading commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011. The Washington Supreme Court echoed this point in *Brown*, emphasizing that the statute is not limited to deception about the nature or solicitation of the message but applies broadly to any false or misleading subject line. *Brown*, 4 Wn.3d at 590, 594.

42. CEMA creates an independent but limited private right of action which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). In addition, the statute authorizes statutory damages of $500 per violation. RCW 19.190.040(1); *see also Brown*, 4 Wn.3d at 585 (confirming that no showing of actual damages is required to recover statutory damages under CEMA).

43. It is a violation of the Consumer Protection Act, RCW 19.86 *et seq*., to initiate the transmission or conspire with another person to initiate the transmission of a commercial electronic mail message that contains false or misleading information in the subject line. RCW 19.190.030(1). As the Washington Supreme

Court explained, CEMA violations are *per se* violations of the CPA because the Legislature recognized that such conduct is categorically contrary to the public interest. *Brown*, 4 Wn.3d at 592.

44. To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co*., 719 P.2d 531, 533 (Wash. 1986).

45. Washington and federal courts have held that a plaintiff states a CPA claim solely by alleging a violation of the CEMA. *See State v. Heckel*, 143 Wash.2d 824, 24 P.3d 404, 407 (2001).

**B. Defendants initiate or conspire to initiate the transmission of commercial emails that contain false or misleading information in the subject lines.**

46. Defendants have initiated (or conspired to initiate) the transmission of hundreds of commercial electronic mail messages with false or misleading subject lines to Named Plaintiff and the Class. The emails were electronic mail messages, in that they were each an electronic message sent to an electronic mail address; the emails from Defendants also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

47. Defendants sent the emails for the purpose of promoting its goods for sale.

48. The emails were sent at Defendants' direction and were approved by Defendants.

**1. Percentage Discount Emails**

49. Defendants frequently send emails with subject lines promising a percentage off the recipient's purchase. The body of these emails (and fine print), however, contains significant and material exclusions.

50. Defendants use the terms "order" and "cart" interchangeably within its Percentage Discount Emails.

51. For example, on February 29, 2024, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: "It's a Leap Year! Take 29% off your Entire Order[.]"

52. The February 29, 2024 email message stated "[n]ot valid with other offers, or on delivery, design services, digital marketing and our website services."

53. June 10, 2024, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: "[siren emoji] NOW -> $15 off orders $75+ [siren emoji.]"

54. The June 10, 2024 email message stated "[n]ot valid with other offers, or on delivery, design services, digital marketing and our website services."

55. On November 22, 2024, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: “TODAY ONLY [siren emoji] Get 30% off your whole cart[.]”

56. Also on November 22, 2024, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: “FINAL HOURS [present emoji] Just for you: 30% off your whole cart[.]”

57. On February 10, 2025, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: “Don’t miss 20% off orders $75+ [stars emoji.]”

58. The February 10, 2025 email message stated “[n]ot valid with other offers, or on delivery, design services, digital marketing and our website services.”

59. On March 18, 2025, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: “Get 20% off your ENTIRE cart [stars emoji] Give your business a spring cleaning[.]”

60. Also on March 18, 2025, Defendants sent Named Plaintiff and Class members an email with a subject line that stated: “FINAL HOURS to get 20% off your entire cart [shopping cart emoji.]”

61. The March 18, 2025 email messages stated “[n]ot valid with other offers, or on delivery, design services, digital marketing and our website services.”

62. These subject lines imply, or affirmatively state, that a straightforward discount will be applied on the recipient's entire purchase, without limitations or exclusions.

63. The fine print at the bottom of each email, however, states that exclusions will apply from the unqualified offer in the subject line.

64. A large portion of the products offered on Defendants' website are excluded from the promotion since Defendants consistently run "offers" on products throughout its website.

65. Thus, if the recipient attempts to purchase any product or service that is excluded from the discount, they will not receive the discount offered in the subject line.

66. A subject line stating a discount off of an "entire order" or "entire cart" in the subject lines of these types of emails is objectively false when the body of the email states that it does not apply to many products on Defendants' website.

67. These types of misrepresentations create a reasonable probability that consumers will be misled about the true scope of the discount.

68. And Defendants understand how to restrict an offer in the subject line of an email because from time to time, Defendants do in fact restrict the scope of the sale in the subject line by including limiting statements related to the amount of the discount and prevalence of the discount.

69. For instance, on April 17, 2025, Defendants sent Class members an email with a subject line that stated: "[eyes emoji] For your eyes only [eyes emoji] Up to 40% off almost everything[.]"

**2. Limited Sale Emails**

70. Defendants also frequently send emails with subject lines advertising the "limited" nature of sales, discounts, and prices. For example, Defendants send emails that state a sale "Ends Wednesday" or "Ends Thursday" is "two days only" or "one more day" or "ends tomorrow" or is available "today only" or "ends tonight" or "ends soon" or in its "final hours" or "Time's running out," implying urgency and finality, but then follows up with extensions of the same offer. By stating that a sale is only on for a limited time, Defendants suggest an offer's rarity or urgency, stimulating consumers' desire to get the deal before it ends. Defendants knowingly understate sale durations in subject lines, as evidenced by their routine extensions of advertised "limited" periods, to create this false urgency. These misstatements are material because they mislead reasonable consumers about sale durations, inducing urgency that affects purchasing decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

71. Defendants' Limited Sales Emails are false or misleading because the sales, discounts, and prices advertised as limited in time are not actually limited in

time, as Defendants routinely offer these exact discounts and extend the promotions beyond the advertised end dates.

72. The following timelines related to these types of "limited" sales illustrate this pattern.

73. On Monday, January 22, 2024, Defendants began promoting its semi-annual sale telling Class Members that the sale "Ends Thursday" "at 11:59pm (PT)."

74. On Tuesday, January 23, 2024, Defendants continued promoting its semi-annual sale telling Class Members that the sale "Ends Thursday" "at 11:59pm (PT)."

75. On Wednesday, January 24, 2024, Defendants started pressuring Class Members with the urgency of action required since the semi-annual sale "Ends Tomorrow" "at 11:59pm (PT)" and included a subject line stating "Time's running out! Check out today's deal + Semi-Annual Sale[.]"

76. On Thursday, January 25, 2024, Defendants told Class Members that the semi-annual sale "ENDS TONIGHT" "at 11:59pm (PT)" and included a subject line stating "Ends Tonight! Check out today's daily deal!"

77. Again, on Thursday, January 25, 2024, Defendants told Class Members that the semi-annual sale has reached its "FINAL HOURS" "at 11:59pm (PT)" and included a subject line stating "Semi-Annual Sale Final hours! Up to 40% off almost everything!"

78. But the sale did not end on January 25, 2024 as represented. Rather, on Friday, January 26, 2024, Defendants sent an email with a subject line stating "Semi-Annual Sale extended Today only up to 40% off almost everything[,]" expressly extending the same promotion beyond the advertised deadline.

79. On July 8, 2024, Defendants began promoting its buy more, save more promotion allowing Class Members to save up to 30% off any 3 or more items purchased using code "SAVEITEMS" through "7/14/2024[.]"

80. On July 13, 2024, Defendants began pressuring Class Members with the urgency of action required since the same buy more, save more promotion "Ends tomorrow" and included a subject line stating "30% off when you order 3+ items - > ENDS TOMORROW" on "7/14/2024[.]"

81. But the sale did not end on July 14, 2024 as represented. Rather, on July 15, 2024, Defendants sent an email with a subject line stating "ONE MORE DAY 30% off any 3+ items continues[,]" which could be accessed using the code "SAVEITEMS" expressly extending the same promotion beyond the advertised deadline.

82. On Monday, July 22, 2024, Defendants began promoting its semi-annual sale offering "up to 40% off almost everything" telling Class Members that the sale "Ends Thursday" on "7/25/2024[.]"

83. On Tuesday, July 23, 2024, Defendants continued promoting its semi-annual sale telling Class Members that the sale “Ends Thursday” on “7/25/2024[.]”

84. On Wednesday, July 24, 2024, Defendants started pressuring Class Members with the urgency of action required since the semi-annual sale “Ends Tomorrow” on “7/25/2024[.]” and included a subject line stating “Time is ticking -> savings END TOMORROW[.]”

85. On Thursday, July 25, 2024, Defendants told Class Members that the semi-annual sale “ENDS TONIGHT” and included a subject line stating “Ends Tonight [] Up to 40% off almost everything[.]”

86. But the sale did not end on July 25, 2024 as represented. Rather, on Friday, July 26, 2024, Defendants sent an email with a subject line stating “ONE MORE DAY | up to 40% off almost everything continues[,]” expressly extending the same promotion beyond the advertised deadline.

87. On September 30, 2024, Defendants began promoting its Fall Favorites Sale allowing Class Members to save up to 40% off through which “Ends Wednesday” “10/2/2024[.]”

88. On October 1, 2024, Defendants began pressuring Class Members with the urgency of action required since the same Fall Favorites Sale “Ends tomorrow”

and included a subject line stating "ENDS TOMORROW 👀 Up to 40% off fall favorites" on "10/2/2024[.]"

89. On October 2, 2024, Defendants continued pressuring Class Members with the urgency of action required since the same Fall Favorites Sale "Ends tonight" and included a subject line stating "Ends Tonight! Up to 40% off top products" on "10/2/2024[.]"

90. But the sale did not end on October 2, 2024 as represented. Rather, on October 3, 2024, Defendants sent an email with a subject line stating "EXTENDED! More time for up to 40% off" continuing the Fall Favorites Sale beyond the advertised deadline.

91. On October 7, 2024, Defendants began promoting its buy more, save more promotion allowing Class Members to save up to 30% off any 3 or more items purchased using code "SAVEITEMS" through "10/10/2024[.]"

92. On October 9, 2024, Defendants began pressuring Class Members with the urgency of action required since the same buy more, save more promotion "Ends tomorrow" and included a subject line stating "Buy more, save more ends TOMORROW" on "10/10/2024[.]"

93. On October 10, 2024, Defendants continued pressuring Class Members with the urgency of action required since the same buy more, save more promotion

"Ends tonight" and included a subject line stating "Ends tonight ⏳ 15% off 1 item, 20% off 2 items & 30% off any 3+ items[.]"

94. But the sale did not end on October 10, 2024 as represented. Rather, on October 11, 2024, Defendants sent an email with a subject line stating "EXTENDED: Buy more, save more lives on[,]" which could be accessed using the code "SAVEITEMS[,]" expressly extending the same promotion beyond the advertised deadline.

95. On October 28, 2024, Defendants began promoting and pressuring Class Members with the urgency of action required to participate in its Flash Sale since promotion "Ends tomorrow" and included a subject line stating "Ends tomorrow: Up to 40% off almost everything" on "10/29/2024[.]"

96. On October 29, 2024, Defendants continued pressuring Class Members with the urgency of action required since the same Flash Sale "Ends tonight" and included a subject line stating "Up to 40% off almost everything ends TONIGHT[.]"

97. But the sale did not end on October 29, 2024 as represented. Rather, on October 30, 2024, Defendants sent an email with a subject line stating "Extended: Up to 40% off almost everything[,]" expressly extending the same promotion beyond the advertised deadline.

98. On December 9, 2024, Defendants began promoting its "up to 40% off ALMOST EVERYTHING" sale to Class Members which "Ends Wednesday" "12/11/2024[.]"

99. On December 10, 2024, Defendants began pressuring Class Members with the urgency of action required since the same sale "Ends tomorrow" and included a subject line stating "Are you ready . . ? Almost EVERYTHING is on sale[.]"

100. On December 11, 2024, Defendants continued pressuring Class Members with the urgency of action required since the same sale "ENDS TONIGHT! Up to 40% off almost everything[.]"

101. Also on December 11, 2024, Defendants sent Class Members an email with the subject line "Up to 40% off almost everything ends TONIGHT[.]"

102. But the sale did not end on December 11, 2024 as represented. Rather, on December 12, 2024, Defendants sent an email expressly extending the same promotion beyond the advertised deadline with a subject line stating "Sale extended for ONE more day!"

103. On Monday, January 13, 2025, Defendants began promoting its semi-annual sale offering "up to 40% off almost everything" telling Class Members that the sale ends on "1/16/2025[.]"

104. On Tuesday, January 14, 2025, Defendants continued promoting its semi-annual sale providing discounts "up to 40% off almost everything" that "Ends Thursday" on "1/16/2025[.]"

105. On Wednesday, January 15, 2025, Defendants started pressuring Class Members with the urgency of action required since the semi-annual sale "Ends Tomorrow" on "1/16/2025" and included a subject line stating "Semi-Annual Sale ENDS Tomorrow[.]"

106. On Thursday, January 16, 2025, Defendants told Class Members that the semi-annual sale "ENDS TONIGHT" on January 16, 2025 and included a subject line stating "ENDS TONIGHT [bull horn emoji] Shop Semi-Annual Sale deals[.]"

107. Again, on Thursday, January 16, 2025, Defendants told Class Members that the semi-annual sale is in its "FINAL HOURS" on January 16, 2025 and included a subject line stating "FINAL HOURS to shop Semi-Annual Sale[.]"

108. But the sale did not end on January 16, 2025 as represented. Rather, on Friday, January 17, 2025, Defendants sent an email with a subject line stating "SEMI-ANNUAL SALE EXTENDED!! Up to 40% off almost everything[,]" expressly extending the same promotion beyond the advertised deadline.

109. Also on January 17, 2025, Defendants sent an email with a subject line stating "WAIT, you've got more time for Semi-Annual Sale deals[.]"

110. Defendants continued to follow the same pattern where, on Monday, April 7, 2025, Defendants sent an email introducing a Friends & Family Sale that could be accessed using the code "FAMILY" that "Ends Thursday" "04/10/2025[.]"

111. On Tuesday, April 8, 2025, Defendants continued promoting its Friends & Family Sale that could be accessed using the code "FAMILY" that "Ends Thursday" "04/10/2025[.]"

112. On Wednesday, April 9, 2025, Defendants started pressuring Class Members with the urgency of action required since the Friends & Family Sale "Ends Tomorrow" on "04/10/2025" and included a subject line stating "Friends & Family Sale [hour glass emoji] ENDS TOMORROW [hour glass emoji.]"

113. On April 10, 2025, Defendants doubled down on this urgency by sending another email with the subject line "Up to 40% off select products [crescent moon emoji] ENDS TONIGHT [crescent moon emoji.]"

114. But the sale did not end on April 10, 2025 as represented. Rather, on April 11, 2025, Defendants sent an email with the subject line "Friends & Family Sale EXTENDED | Get up to 40% off[,]" expressly extending the same promotion beyond the advertised deadline.

115. Defendants repeated this same cycle again starting Monday, May 12, 2025, when Defendants sent an email introducing a 40% off top products sale that "Ends Wednesday" "05/14/2025[.]"

116. On May 13, 2025, Defendants started pressuring Class Members with the urgency of action required since the 40% off top products sale "Ends Tomorrow" on "05/14/2025" and included a subject line stating "ENDS TOMORROW [hour glass emoji] Up to 40% off!"

117. On May 14, 2025, Defendants doubled down on this urgency by sending another email with the subject line "ENDS TONIGHT [running emoji] Hurry! Up to 40% off[.]"

118. And contrary to the limited duration of the advertised sale, on May 15, 2025, Defendants sent an email with the subject line "Sale extended for TODAY ONLY: Save up to 40% off[,]" expressly extending the same promotion beyond the advertised deadline.

119. Defendants followed a similar pattern where, on Monday, August 11, 2025, Defendants sent an email introducing a Buy More, Save More "Flash Sale" that could be accessed using the code "BMSMVOS" that "Ends Thursday" "08/12/2025" with a subject line stating "2 days ONLY [smiley face emoji] Get $15 off orders $50+ [smiley face emoji.]"

120. On Tuesday, August 12, 2025, Defendants continued promoting its Buy More, Save More "Flash Sale" that could be accessed using the code "BMSMVOS" but started pressuring Class Members with the urgency of action

required since the sale "ENDS TONIGHT" "08/12/2025" with a subject line stating "Ends [start emoji] tonight [start emoji] $15 off orders $50+[.]"

121. Later that same day, August 12, 2025, Defendants doubled down on this urgency by sending another email with the subject line "LAST CALL: Buy More, Save More sale is almost over!" In the email message Defendants tell Class Members that the "Flash Sale" is in its "FINAL HOURS[.]"

122. But the sale did not end on August 12, 2025 as represented. Rather, on August 13, 2025, Defendants sent an email with the subject line "EXTENDED: Buy more, save more lives on[,]" expressly extending the same promotion beyond the advertised deadline.

123. On Monday, September 15, 2025, Defendants began promoting its sale offering "up to 40% off top products" telling Class Members that the sale "Ends Thursday" "09/18/2025[.]"

124. On Tuesday, September 16, 2025, Defendants continued promoting its "up to 40% off top products" sale telling Class Members that the sale "Ends Thursday" on "09/18/2025[.]"

125. On Wednesday, September 17, 2025, Defendants started pressuring Class Members with the urgency of action required since the "up to 40% off top products" sale "Ends Tomorrow" on "09/18/2025[.]" and included a subject line stating "Up to 40% off ENDS TOMORROW [hourglass emoji] Time's almost up!"

126. On Thursday, September 18, 2025, Defendants told Class Members that the "up to 40% off top products" sale "ENDS TONIGHT" and included a subject line stating "ENDS TONIGHT: Up to 40% off top products[.]"

127. But the sale did not end on September 18, 2025 as represented. Rather, on Friday, September 19, 2025, Defendants sent an email expressly extending the same promotion beyond the advertised deadline with a subject line stating "EXTENDED [celebration emoji] up to 40% off, one more day!"

128. On Monday, October 6, 2025, Defendants began promoting its sale offering "up to 40% off top products" telling Class Members that the sale "Ends Wednesday" "10/08/2025[.]"

129. On Tuesday, October 7, 2025, Defendants started pressuring Class Members with the urgency of action required since the "up to 40% off top products" sale "Ends Tomorrow" on "10/08/2025" and included a subject line stating "SALE ENDS TOMORROW [eye balls emoji] Up to 40% off top products[.]"

130. On Wednesday, October 8, 2025, Defendants told Class Members that the "up to 40% off top products" sale "ENDS TONIGHT" and included a subject line stating "Ends Tonight! Up to 40% off top products[.]"

131. But the sale did not end on October 8, 2025 as represented. Rather, on Friday, October 9, 2025, Defendants sent an email expressly extending the same

promotion beyond the advertised deadline with a subject line stating "EXTENDED! More time for up to 40% off[.]"

132. On Monday, October 27, 2025, Defendants began promoting its sale with an email subject line stating "Up to 40% off almost EVERYTHING" telling Class Members that the sale "Ends Wednesday" "10/29/2025[.]"

133. On Wednesday, October 29, 2025, Defendants started pressuring Class Members with the urgency of action required since the sale "Ends Tonight" and included a subject line stating "Up to 40% off almost everything ends TONIGHT[.]"

134. But the sale did not end on October 29, 2025 as represented. Rather, on Thursday, October 30, 2025, Defendants sent an email with a subject line stating "Extended: Up to 40% off almost everything[,]" expressly extending the same promotion beyond the advertised deadline.

135. Defendants exerted pressure on its customers to open emails and make purchasing decisions based on a fiction that a sale was limited in time.

136. But each sale described herein was not limited by the duration of the terms contained in the subject lines and emails messages because Defendants had planned to continue each promotion past the initial advertised duration prior to the date each email was sent.

137. For instance, Defendants promote a "semi-annual sale" twice each year. Each "semi-annual sale" commercial electronic mail campaign (July 2022,

January 2023, July 2023, January 2024, July 2024, and January 2025) followed the same pattern by limiting the time the “semi-annual sale” was available by highlighting the end date in subject lines and later extending the sale.

138. Moreover, the limited time sales were also not limited in time because Defendants repeated the same sales multiple times each year and used the exact same advertising copy to promote each sale when later repeated.

139. For instance, Defendants have promoted a “buy more, save more” sale through commercial electronic mail since at least 2014. The copy for the “buy more, save more” campaign is virtually identical from campaign to campaign and offers the same discounts on the same days of the week. Defendants regularly extend these sales.

140. Moreover, Defendants have promoted a “40% off almost everything” promotion through commercial electronic mail on at least 20 different campaigns in the last four years sending on average 5 commercial electronic mail for each campaign.

141. And Defendants have promoted a “40% off top products” promotion through commercial electronic mail on at least 14 different campaigns in the last four years sending on average 5 commercial electronic mail for each campaign.

142. By falsely stating the duration of the sale when that sale is regularly available and issuing serial "extension" emails, Defendants intentionally misled consumers regarding the true time limits of the offer.

**C. Named Plaintiff and Washington residents have received commercial emails from Defendants that contain false or misleading information in the subject lines.**

143. Defendants sent the misleading commercial emails to email addresses that Defendants knew, or had reason to know, were held by Washington residents, either because (i) Defendants had a physical Washington address that was associated with the recipient; (ii) Defendants had access to data regarding the recipient indicating that they were in Washington state; or (iii) information was available to Defendants upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

144. Defendants know where many of its customers reside through several methods.

145. First, for any person that places an order online from Defendants, Defendants associate an email address with a shipping address and/or billing address for that order.

146. Second, Defendants encourage online shoppers to create online accounts. Customers save information in their Defendants accounts along with their email address, such as shipping addresses, billing addresses, and phone numbers.

147. Third, Defendants employ methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Defendants' marketing emails, including by identifying their physical location.

148. Fourth, Defendants also utilize cookies, pixels, and other online tracking technologies to identify and locate the consumers that click on links contained in Defendants' marketing emails and that visit its website.

149. Fifth, Defendants employ sophisticated third parties who create profiles of customers and potential customers, including their email address and physical location.

150. Lastly, Defendants also knew, should have known, or had reason to know that it sends marketing emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country.

151. At all times relevant to this Complaint, Named Plaintiff resided in Washington.

152. Named Plaintiff received Defendants' emails for several years.

153. Named Plaintiff received hundreds of marketing emails from Defendants within the last four years, and typically received more than five emails every week.

154. Named Plaintiff received emails from Defendants through email providers that have data limits. Named Plaintiff has several hundred emails from Defendants in his inbox, but discovery will show that he has received more emails that were deleted to conserve the finite space available in the email inbox.

155. Defendants know, or have reason to know, that Named Plaintiff and Class member email addresses are held by Washington residents.

156. Named Plaintiff and Class members provided email addresses when they subscribed to receive emails from Defendants.

157. Named Plaintiff and Class members have also repeatedly clicked on links contained in Defendants' emails from their computers and cell phones and visited Defendant's online marketplace which was registered to an IP address in Washington at all relevant times.

158. Named Plaintiff and Class members provided an email address, home address, and phone number each time they created an account with Defendants reflecting their Washington address and residency.

159. Named Plaintiff and Class members also added a billing address and shipping address each time they made a purchase from the Defendants' online marketplace using their accounts connected to their email addresses that have been delivered to their homes in Washington.

160. Defendants captured Named Plaintiff and Class member IP addresses and geo location information in the state of Washington at the time they subscribed to receive emails and each time they clicked on a link from an email they received from Defendant or visited Defendant's online marketplace through the use of cookies, web beacons, and other tracking technologies including third-party offerings.

161. In addition, Named Plaintiff and Class members have accounts with Defendants that reflect their home address in the state of Washington. Named Plaintiff and Class members have made purchases from the Defendants' online marketplace that have been delivered to their homes in Washington.

162. Named Plaintiff received the emails with false and misleading subject lines described above to the email addresses connected to his account with Defendants. Named Plaintiff received additional emails with false and misleading subject lines from Defendants.

163. Defendants sent these emails to Named Plaintiff and Class members for the purpose of promoting Defendants' goods for sale.

164. Defendants initiated the transmission or conspired to initiate the transmission of these commercial electronic mail messages to Named Plaintiff and Class members.

165. Named Plaintiff received the emails with false and misleading subject lines described above to the email addresses he provided to Defendants when subscribing to receive emails and that are associated with his account.

166. Named Plaintiff does not want to receive emails with false and misleading subject lines from Defendants, though he would like to continue receiving truthful information from Defendants regarding its products. Due to Defendants' conduct, however, Named Plaintiff cannot tell which emails from Defendants contain truthful information or which emails are spam with false and misleading information designed to spur purchases.

167. Named Plaintiff has identified more than fifty (50) of Defendants' emails with false and misleading subject lines throughout the relevant time period showing Defendants continuous course of conduct.

168. Named Plaintiff continues to receive emails with false and misleading subject lines. Because Named Plaintiff has deleted some of the emails he has received from Defendants, Named Plaintiff is not presently able to identify all the emails with false and misleading subject lines he received. Defendants are aware of all the emails they have sent Named Plaintiff and discovery will show the full number of illegal false and misleading emails Defendants has sent throughout the relevant time period.

## V. CLASS ACTION ALLEGATIONS

169. Class Definition. Pursuant to Civil Rule 23(b)(3), Named Plaintiff brings this case as a class action on behalf of a Class defined as:

> All Washington residents[1] who, within four years before the date of the filing of this complaint until the date any order certifying a class is entered, received an email from or at the behest of Defendants that contained a subject line stating or implying that 1) a percentage discount off would apply to the recipient's "order" or "cart" with no conditions or exclusions; or 2) a sale, discount, price, or other offer would end soon or on a definitive date, and the sale, discount, price, or other offer continued to be offered for at least an additional day.
>
> Excluded from the Class are Defendants, any entity in which Defendants has a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

170. Numerosity. The Class is so numerous that joinder of all members is impracticable. The Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

171. Commonality. There are numerous questions of law and fact common to Named Plaintiff and members of the Class. The common questions of law and fact include, but are not limited to:

---

[1] Residents" shall have the same meaning as "persons" as defined in RCW 19.190.010(11) and RCW 19.86.010(a).

a. Whether Defendants sent commercial electronic mail messages with false and misleading information in the subject lines;

b. Whether Defendants initiated the transmission or conspired to initiate the transmission of commercial electronic mail messages to recipients residing in Washington State in violation of RCW 19.190.020;

c. Whether a violation of RCW 19.190.020 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq*.;

d. Whether Named Plaintiff and the proposed Class are entitled to an injunction enjoining Defendants from sending the unlawful emails in the future; and

e. The nature and extent of Class-wide damages.

172. Typicality. Named Plaintiff's claims are typical of the claims of the Class. Named Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

173. Adequacy. Named Plaintiff will fairly and adequately protect the interests of the Class. Named Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including

consumer class actions. Counsel for Named Plaintiff has significant experience representing consumers in cases involving violations of CEMA. Named Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Named Plaintiff nor counsel have interests that are contrary to or that conflict with those of the proposed Class.

174. Predominance. Defendants have a standard practice of initiating or conspiring to initiate commercial electronic mail messages to email addresses held by Washington State residents. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

175. Superiority. Named Plaintiff and members of the Class have been injured by Defendants' unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable from Defendants' records and there will be no significant difficulty in the management of this case as a class action.

176. Injunctive Relief. Defendants' conduct is uniform as to all members of the Class. Defendants have acted or refused to act on grounds that apply generally

to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Named Plaintiff further alleges, on information and belief, that the emails described in this Complaint are substantially likely to continue in the future if an injunction is not entered.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(Violation of Washington's Commercial Electronic Mail Act, RCW 19.190 *et seq*.)

177. Named Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

178. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that contains false or misleading information in the subject line. These prohibitions target falsity or deception, as interpreted in *Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025).

179. Defendants are each a "person" within the meaning of the CEMA, RCW 19.190.010(11).

180. Defendants initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Named

Plaintiff and proposed Class members with false or misleading information in the subject line.

181. Defendants' acts and omissions violated RCW 19.190.020(1)(b). Defendants knew or had reason to know of the falsity of the subject lines, as shown by its repeated patterns of omitting conditions and exclusions in subject lines while burying them in the fine print of the body of the email.

182. Defendants' acts and omissions injured Named Plaintiff and proposed Class members, as receipt of such misleading emails constitutes injury under CEMA and the CPA as a matter of law, clogging inboxes and wasting time.

183. The balance of the equities favors the entry of permanent injunctive relief against Defendants. Named Plaintiff, the members of the Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendants. A permanent injunction against Defendants is in the public interest. Defendants' unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, Defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

184. Pursuant to RCW 19.190.040(1), Named Plaintiff and each Class member is entitled to the greater of $500 per commercial electronic mail message sent in violation of RCW 19.190.020(1)(b) or actual damages.

185. In addition, Named Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**SECOND CLAIM FOR RELIEF**
(*Per se* violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*.)

186. Named Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

187. Named Plaintiff and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

188. Defendants violated the CEMA by initiating or conspiring to initiate the transmission of commercial electronic mail messages to Named Plaintiff and Class members that contain false or misleading information in the subject line, amounting to material deception.

189. A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq*. RCW 19.190.030.

190. A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law.

191. Defendants' violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

192. Defendants' unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

193. Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.

194. Defendants engaged in a pattern and practice of violating the CEMA. As a result of Defendants' acts and omissions, Named Plaintiff and Class members have sustained damages, including $500 in statutory damages, for each and every email that violates the CEMA. The full amount of damages will be proven at trial. Named Plaintiff and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

195. Under the CPA, Named Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendants from violating the CPA in the future.

196. Defendants' deceptive practices are ongoing and likely to continue absent injunction, as evidenced by its consistent email patterns, vitally affecting the public interest in truthful commercial communications.

## VII. REQUEST FOR RELIEF

WHEREFORE, Named Plaintiff, on their own behalf and on behalf of the members of the Class, request judgment against Defendants as follows:

A. That the Court certify the proposed Class;

B. That the Court appoint Named Plaintiff as Class Representative;

C. That the Court appoint the undersigned counsel as counsel for the Class;

D. That the Court grant injunctive relief as permitted by law to ensure that Defendants will not continue to engage in the unlawful conduct described in this Complaint;

E. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the CEMA;

F. That Defendants be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify members of the Class;

G. That Named Plaintiff and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

H. That the Court enter an order awarding Named Plaintiff reasonable attorneys' fees and costs; and

I. That Named Plaintiff and all Class members be granted other relief as is just and equitable under the circumstances.

## VIII. TRIAL BY JURY

Named Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Z LAW, LLC

Dated: February 24, 2026

/s/ David M. Trojanowski (WSBA #56258)
David M. Trojanowski, Esq. (WSBA # 56258)
2345 York Road, Suite B-13
Timonium, Maryland 21093
(443) 213-1977
dmt@zlawmaryland.com

*Attorney for Named Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties or their counsel of record.

Dated this 24th day of February, 2026.

*s/ David M. Trojanowski*
David M. Trojanowski, Esq.